**Marshall L. SNUFFER,
Defendant-Appellant,**

**v.**

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–783A236.**

Court of Appeals of Indiana,
Third District.

March 29, 1984.

2. Repealed by Acts 1981, P.L. 13, Sec. 1.

Thomas J. Mullins, Merrillville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Marshall L. Snuffer was tried by a jury on two counts of Theft,[1] a class D felony. The jury found Snuffer guilty on Count I and not guilty on Count II. He was sentenced by the trial court to a term of two years. Snuffer appeals, raising the following issues which the court consolidates and restates in the interest of clarity:

I. Whether the trial court erred when it denied Snuffer's motion to suppress evidence obtained as a result of a warrantless search of a vehicle in tow;

II. Whether the trial court erred when it denied Snuffer's motion for severance of Counts I and II;

III. Whether the trial court erred when it denied Snuffer's motion for a twelve-person jury;

IV. Whether the evidence was sufficient to support the verdict and withstand Snuffer's motion for directed verdict; and

V. Whether the trial court erred when it refused to instruct the jury on the lesser included offense of criminal conversion.

### Facts

In February of 1982, Snuffer operated a garage in Portage where he did work on the bodies and frames of motor vehicles. He had no telephone at the garage; he and his employees worked irregular hours, mostly at night; the garage was not identified by signs or advertising; the door to the garage was usually locked while employees were working; and employees were paid in cash.

On February 1, 1982 a truck that had been stolen from Roy Brown on January

---

1. IC 35-43-4-2(a).

19; 1982 was brought to Snuffer's garage. Snuffer and his employee, Gregg Manogg, disassembled Brown's truck and attached its cab to the frame of a used truck Snuffer had purchased from U.S. Steel.

Snuffer's garage had been under surveillance by police, under the direction of Detective Untch of the Portage Police Department. The police had observed that Snuffer seemed to be stripping and rebuilding motor vehicles without a vehicle salvage license.

On February 19, 1982 a police officer noticed a tow truck[2] towing the reassembled truck from Snuffer's garage. The officer notified Detective Untch who then radioed Officer Goetz, also of the Portage Police Department, and told him to stop the tow truck so that Untch and Goetz could investigate the truck being towed.

Goetz saw the tow truck and noted its license plate did not permit the size load the tow truck was towing. Goetz stopped the tow truck just before Untch arrived at the scene.

Untch issued a traffic citation to the driver of the tow truck for operating a vehicle with improper plates. He then searched the vehicle that was being towed and found several irregularities. The federal vehicle identification sticker was missing; a tag on the ignition corresponded with that of a U.S. Steel truck; the ignition locking mechanism was broken, the passenger door lock was missing; and the "tell sheet"[3] found under the driver's seat described the vehicle stolen from Roy Brown. Untch conducted this search without a warrant.

Both vehicles were thereafter impounded. On the basis of the information gathered from the surveillance and the truck search, the police obtained a warrant for the search of Snuffer's building. The subsequent search of the building uncovered additional evidence used against Snuffer at trial.

## I. *Motion to Suppress*

Snuffer argues that the search of the reassembled truck was illegal and that evidence gained as a result of that search should not have been introduced at trial. Apart from the reasons given by the trial court for denying Snuffer's motion to suppress, we find that Snuffer had no standing to object to the search of the cab of the reassembled truck which was still owned by Roy Brown.

The requirement of establishing standing before the assertion of Fourth Amendment rights was explained by the United States Supreme Court in *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. The Supreme Court said:

" 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections."

439 U.S. at 133–34, 99 S.Ct. at 425.

The Indiana Supreme Court considered the *Rakas* holding in *Pollard v. State* (1979), 270 Ind. 599, 388 N.E.2d 496. The Court interpreted *Rakas* to mean that in considering whether evidence should be suppressed as a result of an allegedly illegal search, a court must ask two questions:

---

**2.** The tow truck was owned by Bentley Auto Sales of Gary and was being driven by Perry Parker of Bentley Auto Sales. Snuffer had requested that Bentley do some work on the suspension of the truck.

**3.** A "tell sheet" is a document containing vehicle specifications and identification information which a manufacturer affixes in various places in new vehicles.

"(1) was there a constitutional violation, i.e., was the search and seizure unreasonable within the meaning of the Fourth Amendment, and; (2) if so, were the rights thereby violated the rights of the defendant or some other person. *Rakas* suggests that the answer to this second question may be obtained by determining whether or not the defendant had a legitimate expectation of privacy in the searched premises or property."

388 N.E.2d at 502.

In *Pollard* the Indiana Supreme Court held that a person who is merely a passenger in an automobile that is searched "would not have had a legitimate expectation of privacy such that he could benefit by the suppression of evidence seized therein." *Pollard* at 502–03.

 Similarly, here we can answer the first question framed from *Rakas* by assuming *arguendo* that the warrantless search of the truck was unreasonable under the Fourth Amendment.[4] But, in answer to the second question, Snuffer had no legitimate expectation of privacy in the search of property which he did not own and in which he had no cognizable possessory interest. A person has no legitimate expectation of privacy or any other personal, proprietary or possessory interest in a stolen vehicle. *Mendelvitz v. State* (1981), Ind.App., 416 N.E.2d 1270. Although not all the components of the vehicle searched by Detective Untch in the present case

were stolen, the actual part of the vehicle searched was stolen. Snuffer cannot establish a legitimate privacy interest in the stolen truck cab merely by affixing it to a truck frame which he legally owned.

The motion to suppress was properly denied.

## II. *Severance*

Snuffer was charged with two counts of theft, the first involving the truck owned by Roy Brown and the second involving a truck owned by Jimmy Martin. The two counts were joined pursuant to IC 35–3.1–1–9(a)[5] which reads:

"(a) Two [2] or more offenses can be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) Are of the same or similar character, even if not part of a single scheme or plan; or

(2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan."

Snuffer argues that it was error for the trial court to deny his motion for severance. Snuffer cites IC 35–3.1–1–11(a)[6] which reads:

"(1) Whenever two [2] or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or

---

**4.** The search here cannot be justified as an inventory search for the purpose of safeguarding the owner's property while the vehicle is impounded. *Compare South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Griffin v. State* (1978), 175 Ind.App. 469, 372 N.E.2d 497. The express purpose of Detective Untch in making the stop of the tow truck was to investigate the vehicle being towed.

"Defense Attorney Mr. Mullins:
Q. So tell us why you told Goetz to stop that vehicle. What objectively did you have that you could stop that vehicle?
Detective Untch:
A. Stop the tow truck?
Q. Yes.
A. We were going to stop to investigate the vehicle."

Tr. p. 151.
"If a warrantless search is to be recognized as a lawful inventory search, there must be at least a showing that it was conducted for some legitimate police purpose other than a search for evidence." *Commonwealth v. Benoit* (1981), 382 Mass. 210, 415 N.E.2d 818, 824. There also were no exigent circumstances to justify such a search without a warrant. *See Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. The opportunity for search was not fleeting. *Id.*

**5.** Repealed, effective September 1, 1982. Now IC 35–34–1–9.

**6.** Repealed, effective September 1, 1982. Now IC 35–34–1–11.

similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense with a view to the number of offenses charged, the complexity of the evidence to be offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense."

The basis for Snuffer's argument is that a trial court must grant severance in cases where joinder is solely on the ground that the counts are of the same or similar character. He impliedly concedes that in all other cases joinder is subject to the sound discretion of the trial judge.

█ We are in agreement with Snuffer but believe he has only chosen to see half of the picture. Joinder here was not available solely on the grounds of the similarity of the counts. It was also permitted due to the fact the individual thefts were part of a series of connected acts, "constituting parts of a single scheme or plan." One truck had just been towed from Snuffer's garage when it was taken into police control; the other was found later that day at Snuffer's garage pursuant to a validly executed search of the garage. The joinder of alleged crimes related as were these two is within the sound discretion of the trial judge and will be reversed only for an abuse of discretion. *Willard v. State* (1980), 272 Ind. 589, 400 N.E.2d 151.

Because Snuffer bases his argument here solely on the mistaken belief that the trial judge had a duty to grant severance, making no argument as to any abuse of discretion, we find that the trial judge did not err when he denied Snuffer's motion for severance of offenses.

### III. *Twelve Person Jury*

█ Snuffer was tried by a six-person jury after the court denied his motion for a jury of twelve persons. The statute applicable at the time of his trial was IC 35–1–30–1 [7] which reads:

"Sec. 1. The trial jury used in civil cases shall act also in criminal cases, but must in criminal cases consist of:

(1) twelve (12) qualified jurors in a felony case other than a Class D felony case; or

(2) six (6) qualified jurors in a Class D felony, misdemeanor, infraction, or ordinance violation case."

Snuffer boldly asserts that it was clearly contrary to the Sixth and Fourteenth Amendments of the Constitution to require him to be tried by a six person jury when, because of the joinder of more than one class D felony count, he faced the possibility of a sentence as great as that for a class C felony which requires trial by a twelve-person jury. He offers no case authority to support his assertion.

He further argues that the term "*a* class D felony" (emphasis added) as used in the statute means that the six-person jury is required only if a defendant is charged with one class D felony. Snuffer's interpretation of the statute would lead to absurd results which we must presume the Legislature did not intend. If we were to extend Snuffer's suggestion that the modifying word "a" must mean "one and only one" to the rest of the statute, the entire jury rule would apparently apply only to cases where only one felony was charged. The statute, as paraphrased by Snuffer, would require twelve jurors in cases involving one and only one class A, B or C felony and six jurors in cases involving one and only one class D felony. As such there would be no jury provision for cases involving the joinder of two or more offenses. The trial court was correct in avoiding this absurdity.

"A class D felony case" is one involving only class D felonies. The trial court was

7. Repealed, effective September 1, 1982. Now IC 35–37–1–1.

not in error when it denied Snuffer's motion for a twelve-person jury.

### IV. *Sufficiency of the Evidence*

■ Snuffer also argues that the jury verdict is not supported by sufficient evidence upon all of the necessary elements of theft.[8] (For our standard of appellate review see *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. den.* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.)

The elements of theft are:

(1) Knowingly or intentionally;

(2) exerting unauthorized control;

(3) over property of another person;

(4) with intent to deprive the other person of any part of its value or use: IC 35–43–4–2(a).

■ Snuffer argues that there was not sufficient evidence that the vehicle recovered was that of Roy Brown. The argument ignores the identification made by Brown that parts of the recovered vehicle were his (Tr. pp. 210–15), Manogg's detailed testimony as to the vehicle stripping and reassembly operation in Snuffer's garage (Tr. pp. 357–76) and the recovery of the "tell sheet" and Brown's personal property from the cab of the reassembled truck (Tr. pp. 214–21, 375–76, 497–504). This evidence was clearly sufficient to allow the jury to conclude that the vehicle which Snuffer dismantled was that of Roy Brown.

■ Snuffer's only other argument as to the sufficiency of the evidence is there was no evidence at trial that he had taken the vehicle from Roy Brown.[9] This argument is without merit. The statute does not require proof that Snuffer was the person who took the vehicle from Brown. It only requires that he exerted unauthorized control over the vehicle with the intent to deprive the true owner, whoever that might have been, of part of its value or use.

To "exert control over property" is defined by IC 35–43–4–1 as "to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property ..:.." Theft therefore includes the unauthorized *possession* of property of another. Theft convictions have repeatedly been affirmed on the basis of unexplained possession of recently stolen property. *See Short v. State* (1982), Ind., 443 N.E.2d 298, 307; *Ward v. State* (1982), Ind., 439 N.E.2d 156, 159; *Muse v. State* (1981), Ind., 419 N.E.2d 1302, 1304. The convictions have been upheld even though a particular defendant could have been charged under the offense of receiving stolen property, IC 35–43–4–2(b), the offense with which Snuffer implies by his argument he should have been charged.

The evidence was sufficient to support Snuffer's conviction for theft.

### V. *Instructions on Lesser Included Offense*

Snuffer's final contention is that it was error for the court to refuse to give his submitted final instruction on the lesser included offense of conversion.[10]

■ Conversion is a lesser included offense of theft, *Wells v. State* (1982), Ind., 441 N.E.2d 1366, 1368; but a trial court may properly refuse to give a tendered instruction when not supported by the evidence presented at trial. *Jones v. State* (1982), Ind., 438 N.E.2d 972, 975; *Harris v. State* (1977), 266 Ind. 661, 662, 366 N.E.2d 186, 188. An instruction can also be refused when it is incompatible with the defense

---

8. Snuffer consolidates his argument on this issue with the issue of whether the trial court erred in failing to grant his motion for a directed verdict. Appellant's brief p. 26. If the evidence is sufficient to sustain the jury verdict the denial of the motion for directed verdict would have been proper. *Holliday v. State* (1970), 254 Ind. 85, 257 N.E.2d 679.

9. The undisputed evidence is that Brown's vehicle was delivered to Snuffer by Chet Newsome. (Tr. pp. 357–58.).

10. IC 35–43–4–3.

raised by the defendant at trial. *Holland v. State* (1983), Ind., 444 N.E.2d 1190, 1192.

 Snuffer's defense throughout the trial was that the vehicle involved was owned by him; i.e., that he did not exert *unauthorized* control over property of *another person.* These elements are common to both theft and conversion so if Snuffer was found not guilty of theft he would be not guilty of conversion as a matter of law. "Intent to deprive," the only element of theft that is not a part of conversion, was not in issue.[11]

11. However, this element was properly proved

The trial court did not err by refusing to give Snuffer's tendered final instruction on the lesser included offense of conversion.

The trial court is affirmed.

STATON, P.J., and HOFFMAN, J., concur.

by the state to support the theft conviction.