John C. HILL, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1280S435.

Supreme Court of Indiana.

Nov. 28, 1984.

Dwight Ritter, Mendelson, Kennedy, Miller, Muller & Hall, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Richard C. Webster, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

PIVARNIK, Justice.

On August 11, 1980, Defendant-Appellant John C. Hill was convicted of child molesting, a class B felony, by a jury in the Marion Superior Court. On September 2, 1980, the Honorable Jay B. Haggerty sentenced Appellant to fifteen years in the Indiana Department of Corrections. Appellant now appeals this judgment and raises the following three issues:

1. insufficient evidence of identification of Appellant;

2. error by the trial court in admitting statements of the appellant; and

3. error by the trial court in admitting opinion evidence.

On January 28, 1980, eleven year old S.W. received a phone call from her estranged stepfather, Appellant John Hill. Appellant asked S.W., the victim, to walk to his house for lunch the next day and to bring her younger brother. S.W. went to school the next day, January 29, 1980, and called Appellant around 11:50 a.m. Appellant again asked S.W. to walk to his house. S.W. walked to Appellant's house, arriving around 12:20 p.m. Appellant met S.W. at the door in his undershorts. He requested a kiss, but S.W. declined. Appellant told the victim there was cereal on the kitchen table for her to eat. She proceeded to the kitchen and had finished eating when Appellant entered to tell her he had a surprise for her in the bedroom. S.W. went to Appellant's bedroom, sat on the edge of the bed, and watched television. She heard Appellant running bathwater. Then he returned to the bedroom and requested S.W. dry him off with a towel, but she refused. Appellant then told the victim to come to him. As she did so he attempted to pull her pants down three times but she resisted. Appellant then held her hands over her head and pulled her pants off. He pulled her underpants down to her ankles, and pulled down his pants and undershorts. As he started to rub against the victim, she asked him to stop. He responded that he had something that would make it not hurt bad and applied some "white stuff" to S.W. and himself. Appellant then inserted his penis into the victim's vagina. S.W. looked down and saw "a puddle of clear stuff" on her legs. Just then Appellant handed her a towel and told her to wipe herself. She then went into the bathroom, dressed, and went in the kitchen. Appellant told her they would both get in trouble if she told anyone about the incident, and he further promised to buy her a bike and three or four pairs of pants if she didn't tell anyone. Appellant returned S.W. to her school around 3:00 p.m. S.W. and Appellant had been alone in Appellant's house throughout S.W.'s visit.

Later that evening S.W. told her mother what had happened. S.W.'s mother called the police who came and took statements. Then S.W. was taken to Methodist Hospital and was examined. The examination revealed a small scratch at the posterior por-

tion of the entrance to the vagina. It also showed the hymenal ring not intact. The area around the entrance to the vagina was reddened. No tests for sperm were made at this time, however, a tube of vaginal washings taken at this time was tested by an Indianapolis Police Department serologist. A microscopic search made by the serologist for the detection of sperm was found to be positive. This indicated the victim had had intercourse within the past twenty-four to thirty-six hours.

## I

Appellant first asserts the State failed to have S.W. identify the appellant at trial as being the perpetrator of the offense. Accordingly, Appellant argues, the verdict is not supported by the evidence and must be reversed.

When the Court is confronted with a challenge to the sufficiency of the evidence, it neither weighs evidence nor judges credibility; rather, the Court examines only the circumstantial and direct evidence most favorable to the State, together with all reasonable inferences which can be drawn therefrom. If there is evidence of probative value to support the conclusion of the jury in the trial court, the conviction will not be overturned. *Smith v. State,* (1984) Ind., 465 N.E.2d 1105, 1124, *reh. denied; Napier v. State,* (1983) Ind., 445 N.E.2d 1361, *reh. denied.*

S.W. did not point to Appellant at trial and say, "That is the man." However, it is well settled that a defendant may be identified by name. *Rogers v. State,* (1979) 272 Ind. 65, 396 N.E.2d 348. Appellant John Hill was present at trial. S.W. testified she knew the defendant, John Hill and he was her stepfather. She further testified that John Hill came to the door of his house in his undershorts and that no one else was in the house except John Hill and herself. The victim then related the molestation incident. It is clear from this testimony Appellant was the same John Hill who molested S.W. Therefore, the evidence of identity was sufficient to show Appellant and the perpetrator of the crime

were one and the same man. No error has been shown on this issue.

## II

Appellant next contends the State failed to show a knowing and intelligent waiver of constitutional rights before statements made by Appellant were admitted at trial. He argues the trial court consequently erred by admitting these statements. We do not agree.

On February 2, 1980, Appellant was arrested and advised of the charges against him along with his rights. Appellant signed the *Miranda* rights on the back of the arrest slip. While riding downtown with Officer Hogan Black, Appellant stated he wished to talk with Officer Black. Officer Black did not initiate the conversation with Appellant. Appellant asked about the molestation charge and when told what a molestation was, stated he just touched the victim but did not rape her. This statement was subsequently admitted at trial. Appellant now contends there was no showing he waived his right to remain silent or that his statement was voluntarily given.

The State contends it was not error to allow Appellant's statement into evidence because it was volunteered. The record shows Officer Black did not question Appellant during the ride nor did he make statements to induce Appellant to make this declaration. The requirements of *Miranda* do not apply beyond coercive custodial interrogation. *Resnover v. State,* (1984) Ind., 460 N.E.2d 922, 932, *reh. denied; Partlow v. State,* (1983) Ind., 453 N.E.2d 259 *cert. denied* (1984) —— U.S. ——, 104 S.Ct. 983, 79 L.Ed.2d 219. Any statement made freely, voluntarily, and without any compelling influence is admissible evidence. *Rhode Island v. Innis,* (1980) 446 U.S. 291, 100 S.Ct. 1682, 1692, 64 L.Ed.2d 297; *Roberts v. United States,* (1980) 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622. Appellant's statement was uncoerced. We therefore find no violation of Appellant's rights and that the trial

court properly admitted Officer Black's testimony.

Appellant also made other statements that were admitted at trial over Appellant's objection. Appellant made statements to Detective Daniel Grau, who investigated the case, which placed the victim at Appellant's house during the molestation.

On February 4, 1980, Detective Grau went to Marion County Jail to talk to Appellant. Detective Grau fully reread Appellant his *Miranda* rights. Appellant would not sign the standard rights waiver, but said he would talk to Detective Grau. Appellant then made the incriminating statement admitted at trial.

■■■ When reviewing the trial court's determination to admit inculpatory evidence over defendant's objection that the evidence was obtained in violation of his rights, this Court will not reweigh the evidence. *Hughes v. State*, (1983) Ind., 453 N.E.2d 275. This Court will, however, look to the evidence supportive of the trial court's ruling to determine if it was substantial and probative and hence sufficient to sustain that ruling. Id.; *Kern v. State*, (1981) Ind., 426 N.E.2d 385; *Jackson v. State*, (1980) 274 Ind. 297, 411 N.E.2d 609. The law is clear that the refusal to sign a waiver does not require suppression if the defendant talks freely after the *Miranda* warnings have been given. *Cobb v. State*, (1980) 274 Ind. 342, 412 N.E.2d 728, 735 *reh. denied; Morris v. State*, (1977) 266 Ind. 473, 364 N.E.2d 132, 136 *cert. denied* (1977) 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462. In order for an accused to effectively waive his privilege of silence and his right to an attorney the waiver must be made voluntarily, knowingly, and intelligently. *Lane v. State*, (1977) 266 Ind. 485, 364 N.E.2d 756, *reh. denied.*

■■ It is clear from the record Appellant was fully apprised of his rights before questioning. He said he would talk to Detective Grau, although he would not sign a waiver form. At trial Appellant had an opportunity to and did cross-examine Detective Grau about the circumstances surrounding Grau's questioning of Appellant. We find no evidence that Appellant was induced by any violence, threats, promises, or other improper influence to make any incriminating statements. Accordingly, Appellant having been fully advised of his *Miranda* rights, knowingly and voluntarily waived them. As a result, the trial court did not err by admitting testimony about Appellant's statement.

### III

At trial the State called Valerie Breedlove, a forensic serologist with the Indianapolis Police Department. She had performed a microscopic examination of the victim's vaginal washings. The examination results were positive due to the presence of sperm. The State then asked whether, based on this microscopic examination, Breedlove could form an opinion as to whether or not the person whose specimens were tested had intercourse within a certain period of time. Breedlove opined that the person had had intercourse within the prior twenty-four to thirty-six hours. Appellant argues this evidence lacked the proper foundation and concerned an ultimate fact in issue such that its admission was error.

■■ The trial court has broad discretion to determine qualifications of experts and to admit opinion evidence. Sufficiency of foundation is a matter of sound discretion of the trial court and will be reversed only for abuse of that discretion. *Napier v. State*, (1983) Ind., 445 N.E.2d 1361 *reh. denied; Hergenrother v. State*, (1981) Ind.App., 425 N.E.2d 225, *trans. denied.*

Breedlove testified about what her job consisted of, her educational background, and her work experience. She testified she obtained samples of vaginal washings, returned them to her lab, and performed tests on them. Sperm cells were revealed upon microscopic examination. She also testified sperm is most readily found in the first three to twelve hours, but could be found as late as forty-eight hours after intercourse. Breedlove then testified that,

based on this evidence, she thought the person from whom the vaginal washings had been taken had had intercourse within the last twenty-four to thirty-six hours.

 Appellant contends that an insufficient foundation existed for Breedlove to offer into evidence her opinion about a general time frame within which intercourse occurred. The record suggests Breedlove was well educated and experienced in matters beyond the general common knowledge of the jury. Thus, the trial court did not abuse its discretion by admitting Breedlove's testimony.

Appellant also alleges the admission of the testimony was error because it concerned the ultimate fact in issue. A witness may give an opinion as to the ultimate fact in issue. The decision to allow the opinion is left to the discretion of the trial judge and is reviewable only for an abuse of discretion. *Blackmon v. State,* (1983) Ind., 455 N.E.2d 586; *Shelby v. State,* (1981) Ind., 428 N.E.2d 1241, 1243. Once again, in light of the witness' testimony of her qualifications and of the tests she performed, it cannot be said the trial court abused its discretion by allowing her opinion testimony concerning the time of the occurrence of intercourse. Appellant contends this was an area in which the jurors were as well qualified to form an opinion as Breedlove. If this were the case, opinion testimony should not have been permitted. *Hensley v. State,* (1983) Ind., 448 N.E.2d 665. However, this was not the case. The jurors were not qualified to determine the time within which intercourse had taken place from the presence of sperm in a laboratory sample. The expertise of serologist Breedlove was necessary to assist the jury in deriving information from the vaginal washings. We therefore find there was no error in allowing the witness to give her opinion.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and DeBRULER, HUNTER, and PRENTICE, JJ., concur.